UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff,<br><br>   v.<br><br>HEATH SEAN SILVERCLOUD,<br><br>                         Defendant. | Case No. 19-cr-01787-BAS-9<br><br>**ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE (ECF No. 1467)** |

On September 17, 2019, the Court sentenced Mr. Silvercloud to 48 months in custody, of which he has served approximately 19 months. (ECF No. 609.) Mr. Silvercloud now moves to reduce his sentence to time served, arguing that his medical condition places him at severe risk if he were to re-contract COVID-19 and that he has received inadequate care for an additional medical condition. (ECF No. 1467 ("Defendant's Motion").) The Government opposes. (ECF No. 1460 ("Government's Response").) For the reasons stated below, the Court **DENIES** Mr. Silvercloud's request.

**I.    BACKGROUND**

Through a series of intercepted wire taps, the Government was able to identify and charge over forty defendants with participation in a sophisticated poly-drug distribution

and money laundering network. (Presentence Report ("PSR") ¶¶ 17–19, ECF No. 481.) On July 19 and July 24, 2018, as part of this conspiracy, Mr. Silvercloud sold methamphetamine to an undercover agent. (*Id.*) He pled guilty to conspiracy to distribute methamphetamine and conspiracy to money launder. (PSR ¶ 3.) The Court sentenced Mr. Silvercloud to 48 months in custody, concurrent on each count. (ECF No. 609.)

Mr. Silvercloud has a 2013 conviction for DUI, and on June 18, 2018, one month before he sold the methamphetamine to the undercover agent in this case, he was sentenced for transporting illegal aliens and was sentenced to time served. (PSR ¶¶ 45–46.) He was on federal supervised release at the time he participated in the conspiracy in this case. (*Id.*) Furthermore, Mr. Silvercloud has a problem with methamphetamine addiction. (PSR ¶¶ 69–72.) When he was released on supervised release in the alien smuggling case, he entered residential treatment for his drug addiction at Veterans Village in San Diego but left after a few days and did not reenter treatment. (PSR ¶ 46.) He has been participating in the RDAP drug treatment program while in custody since August 24, 2020. (Defendant's Motion, Exh. I.)

Mr. Silvercloud suffers from a chronic illness that requires monitoring, which he contracted in 2014. (PSR ¶ 64.) He takes medication to alleviate the symptoms, and apparently he has remained asymptomatic while in custody.[1] Mr. Silvercloud also claims that the Bureau of Prisons ("BOP") has been ignoring symptoms that might indicate colon cancer and has failed to get him the treatment he needs for these symptoms. (Defendant's Motion Exh. A, Declaration of Mr. Silvercloud ¶¶ 3–6.) There is evidence that a BOP doctor submitted an order for a fecal occult blood test and indicated he would follow up with Mr. Silvercloud, but Mr. Silvercloud claims that, as of December 17, 2020, he has not received this test. (Defendant's Motion, Exhs. H, A ¶ 6.)

---

[1] Neither party submits Mr. Silvercloud's complete medical records from the BOP. Mr. Silvercloud submits only one page referring to his concerns about colon cancer. (Defendant's Motion, Exh. H.) However, Mr. Silvercloud does not claim that he has suffered from any symptoms from this chronic illness.

Mr. Silvercloud is being held at Terminal Island. (Defendant's Motion, Exh. A ¶ 1.) Although Terminal Island had a very serious outbreak of COVID-19 last year, currently the facility is reporting that only one inmate and 16 staff members are testing positive. *See* BOP Covid-19 Cases, http://www.bop.gov/coronavirus (last visited Jan. 14, 2021). According to the Government, vaccines have been delivered to Terminal Island and inmates with health vulnerabilities are scheduled to receive vaccines after BOP staff. (Government's Response.) The Government asserts that five hundred BOP inmates have been vaccinated as of January 5, 2021. (*Id.*)

Mr. Silvercloud tested positive for COVID-19 in April 2020. According to his declaration, he was asymptomatic at the time and has apparently recovered. (Defendant's Motion, Exh. A ¶ 7.)

On May 3, 2020, Defendant requested compassionate release from the Warden at Terminal Island. (Defendant's Motion, Exh. C.) The Warden denied the request, and Mr. Silvercloud exhausted his appeals from this denial on August 7, 2020. (Defendant's Motion, Exhs. D, E and F.)

## II.   ANALYSIS

### A.   Exhaustion of Administrative Remedies

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 825–26 (2010). A narrow exception, compassionate release, allows a court to reduce a sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i).

However, a court may only consider a defendant's motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* In other words, Mr. Silvercloud must fully exhaust his administrative remedies from the Warden of the facility where he is being housed before he turns to the Court for relief.

Section 3582 provides two alternative routes to exhaustion. In the first, a petitioner files a petition, which is acted on by the Warden, and the petitioner proceeds to fully exhaust his or her administrative remedies by appealing this refusal from the Warden. In the second, the Warden takes no action, 30 days lapse and, because of the Warden's failure to act, the petitioner may proceed without fully exhausting his or her administrative remedies.

Mr. Silvercloud presents evidence that he submitted a request for compassionate release to the Warden on May 3, 2020. (Defendant's Motion, Exh. C.) He also demonstrates that he appealed the Warden's denial of this request and completed this appeal. (Defendant's Motion, Exhs. D, E and F.) Thus, Mr. Silvercloud has exhausted his administrative remedies.

### B.     Extraordinary and Compelling Circumstances

If the exhaustion requirement is met, a court may modify or reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(a). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Holden*, 452 F. Supp. 3d 964, 966 (D. Or. 2020).

First, the Court acknowledges what ought to be obvious by now: COVID-19 is posing a serious threat throughout the United States, but particularly within the BOP system. Although the BOP is doing its best to keep the disease in check, the forced closeness of inmates and staff and the inability to enforce social distancing standards has made it difficult to keep the virus contained. Clearly, the BOP was unsuccessful at keeping Mr. Silvercloud protected, and by April 2020, he had tested positive for the virus.

Additionally, Mr. Silvercloud suffers from a chronic illness that "might" cause him to be at increased risk of severe illness from COVID-19 if he has a low certain cell count or is not on treatment. *See* CDC, Coronavirus Disease 2019 (COVID-19), People with

Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 29, 2020). However, Mr. Silvercloud does not present any evidence that he has ever had a low relevant cell count or that he is not on treatment.

Additionally, Mr. Silvercloud had COVID-19 last April and was asymptomatic. (Defendant's Motion, Exh. A ¶ 7.) Courts have split on the issue of whether an individual who has recovered from COVID-19 can still show extraordinary circumstances. In *United States v. Molley*, No. CR15-0254-JCC, 2020 WL 3498482, at *2 (W.D. Wash. June 29, 2020), the court found "we do not know to what degree or duration persons are protected against reinfection . . . following recovery from COVID." *Id.* (citing CDC, *Clinical Questions About COVID-19: Questions and Answers*, http://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html (then last updated June 4, 2020)). "People could be immune from reinfection entirely, partially, or not at all." *Id.* (citing Paul Kellam & Wendy Barclay, *The Dynamics of Humoral Responses Following SARS-Cov-2 Infection and the Potential for Reinfection*, J. Gen. Virology (May 2020), at 1; Erin Garcia de Jesus, *New Data Suggests People Aren't Getting Reinfected with the Coronavirus*, Science News (May 19, 2020), http://www.sciencenews.org/article/coronavirus-COVID-19-reinfection-immune-response; Apoorva Mandavilli, *You May Have Antibodies After Coronavirus Infection But Not For Long*, N.Y. Times, https://www.nytimes.com/2020/06/18/health/coronavirus-antibodies.html (then last updated June 20, 2020)). Thus, the court concluded the possibility that a defendant might get re-infected and, the next time around, suffer more severe consequences, was too speculative to warrant relief. *Id.*

On the other hand, in *United States v. Yellin*, No. 3:15-cr-3181-BTM-1, 2020 WL 3488738, at *3 (S.D. Cal. June 26, 2020), the court concluded, "while Mr. Yellin's medical record states he recovered from COVID-19, the possibility of reinfection persists." As the court points out in *Yellin*, the medical evidence is still uncertain as to the effect of a recovery on future infection. Ultimately, the court in *Yellin* concluded: "The Court does

not presume to have more information than the experts researching this virus. Without scientific conclusions as to whether reinfection is possible or how long COVID-19 immunity lasts, the Court must err on the side of caution to avoid potentially lethal consequences for Mr. Yellin." *Id.*

Given that Mr. Silvercloud has failed to provide evidence that he has a low relevant cell count or is not on treatment for his chronic illness, given that he previously had COVID-19 but was asymptomatic, given that he would be an outlier if he was reinfected with the virus and had a stronger reaction the second time around, and finally given that vaccines are going to be administered in the near future, the Court is not convinced that the threat of coronavirus constitutes an "extraordinary and compelling" circumstance justifying Mr. Silvercloud's release.

To the extent Mr. Silvercloud argues that he has received inadequate medical treatment while he is in custody, the Court finds he has failed to carry his burden in this regard. It does appear that the BOP doctors are aware of Mr. Silvercloud's colon cancer concern and that a doctor ordered a fecal occult blood test in September because of this concern. The fact that he had not yet received the test in December is insufficient evidence to support his claim that he has received inadequate medical care. Additionally, as discussed below, the Section 3553(a) factors do not support Mr. Silvercloud's early release from custody.

C.    **Section 3553(a) Factors**

Although the two individual transactions in which Mr. Silvercloud was involved were relatively small, he was involved with a much larger drug distribution and money laundering conspiracy. Even more troubling, Mr. Silvercloud had just been released from federal custody the month before he committed this offense. He was on supervised release at the time, a fact that did not deter him from repeat criminal conduct. Additionally, Mr. Silvercloud has a serious methamphetamine addiction. And while he was previously on supervised release, he walked away after a couple of days from the Veterans Village drug treatment program—the program he is now asking to be released to complete. He is

currently participating in the BOP's RDAP program, and although, given the coronavirus, it might not be as robust as it once was, the program should return to normal soon as inmates get vaccinated. Thus, the nature and circumstances of the offense, the history and characteristics of the defendant, the need for adequate deterrence and the need for treatment all militate against reducing Mr. Silvercloud's sentence.

Furthermore, Mr. Silvercloud has only been in custody for nineteen months, well under 50% of his 48-month sentence. Thus, the Court finds that early release would not reflect the seriousness of the offense or promote respect for the laws. The Court concludes that the factors listed in 18 U.S.C. § 3553(a) do not support reducing Mr. Silvercloud's sentence to time served.

**III.   CONCLUSION**

For the reasons stated above, the Court **DENIES** Defendant's Motion to Reduce His Sentence Pursuant to the First Step Act. (ECF No. 1467.)

**IT IS SO ORDERED.**

**DATED: January 15, 2021**

Hon. Cynthia Bashant
United States District Judge